## In re COMMERCIAL NAT. BANK OF PHILADELPHIA.

No. M. 418.

District Court, E. D. Pennsylvania.

March 10, 1944.

Josef Jaffe, C. Russell Phillips, and Charles T. Bonos, Jr., all of Philadelphia, Pa., for Pennsylvania Insurance Commissioner, ancillary receiver of National Surety Co.

J. Howard Reber, of Philadelphia, Pa., amicus curiae.

Swartz, Campbell & Henry, of Philadelphia, Pa., for Maryland Casualty Co.

Williams, Brittain & Sinclair, of Philadelphia, Pa., for Federal Reserve Bank of Philadelphia.

Maurice W. Sloan, of Philadelphia, Pa., for respondent.

**KIRKPATRICK, District Judge.**

This case is before the court on petition by Maryland Casualty Company to direct the payment to it of a dividend paid to the Clerk of this Court by the liquidator of the insolvent Commercial National Bank of Philadelphia. The answer admits the facts and the essential part of the story follows, the amounts mentioned being round figures.

When the Commercial National Bank closed on February 28, 1933 it had on deposit $100,000 of bankruptcy funds. The payment of the deposit was secured by two bonds, one of $25,000 given by Maryland Casualty Company and the other of $75,-000 given by National Surety Company. Then, in chronological order:

1. National became insolvent and was placed in rehabilitation in New York State with an ancillary receiver in Pennsylvania.

2. Maryland paid the Clerk of the Court its $25,000 obligation in full.

3. The liquidator of the Commercial National Bank from time to time paid the Clerk dividends amounting in all to $50,000.

4. The liquidator of National paid the Clerk of the Court $25,000 upon National's bond.

At this point (April 8, 1942) it may be noted that the creditor, (the Clerk of the Court) had been paid in full, that the two sureties had each paid the same amount ($25,000) and that the solvent surety (Maryland) had discharged its bond obligation in full, while the insolvent surety (National) had paid only one-third of its. Incidentally, the general creditors of National had received 55½ percent of their claim.

5. The liquidator of the Commercial National Bank has declared and paid the Clerk of the District Court the final dividend of 6.9 percent or $6,900.

A number of other matters are pleaded but none of them have any bearing upon the question presented.

Maryland's petition asks that the entire amount of this dividend be paid to it. National concedes that Maryland is entitled to one-half and demands the other half.

Maryland bases its claim to subrogation on the fact that it has paid its obligation in full whereas National has only paid one-third of what it was bound for, and it points out that, had liquidation of the Commercial Bank taken place immediately or automatically upon its insolvency, the distribution of the assets on hand would have reduced the total indebtedness of the bonding companies to $43,000 of which its (Maryland's) share would have been $10,750 and National's share $32,250—this is on the one to three basis upon which the two companies were respectively bound. Consequently, it argues, that having overpaid its pro rata liability by $14,250 and National having underpaid its by $7,250, Maryland is the only one of the two en-

titled to the present dividend (and even then it will still have overpaid).

The argument is not without appeal and, if there were no other parties involved and National were solvent, might be compelling. Contribution between co-sureties is a well-established right and, to give Maryland this dividend by subrogating it to the creditors' rights, would be merely by-passing a separate action against National for contribution, since it would get no less if it were compelled to sue National. This is really the basis of the Pennsylvania decisions cited by Maryland. The difficulty with the argument is that National is insolvent.

Subrogation has been variously defined but all authorities agree that it is, in its essence, pure equity. In every case the interests of all parties who might be affected by applying the doctrine must be taken into consideration, balanced against one another and a solution arrived at which, so far as possible, is fair and just to all concerned.

Here the equity which Maryland asserts conflicts with the equities of the creditors of National, its insolvent co-surety. The result of granting the petition would be to give Maryland a preference pro tanto, over these remote and entirely innocent third parties. There is no compelling consideration of fairness or justice which requires this. Maryland's promptness in paying the full amount of its obligation was, of course, commendable and disposes one in its favor but, after all, it was so nominated in the bond and Maryland paid no more than the letter of its obligation required it to pay. National's failure to pay promptly was in no sense due to its fault or the fault of its creditors. Its insolvency followed that of the Commercial Bank almost immediately.

Denying the petition should not leave Maryland entirely remediless. It still has the right of contribution against National and I see no reason why it might not have enforced that right through proving the paid creditor's claim against National's estate in liquidation. As to whether it is too late to do so now and as to the amount to which it might be entitled to prove, I express no opinion. And inasmuch as National's liquidator concedes one-half the dividend I need not go into that phase of the question. What is here decided is that a surety's right to subrogation to the claim of a paid creditor may not be asserted to the detriment of innocent creditors of an insolvent co-surety.

The petition is dismissed and the rule discharged as to all sums beyond $3,452.22.